Good morning, we'd like to welcome Judge Callahan to her debut on the Ninth Circuit Court of Appeals, and we will call the cases off the calendar in the order in which they are listed. The first is United States v. Redd, not submitted on the briefs. The first case for oral argument is United States v. Charley Haswood. Counsel, you may begin when you're ready. May it please the Court, I am Sue Song, arguing on behalf of the United States. I would like to reserve two minutes for rebuttal. This is a child sexual abuse case that originated on the Navajo Indian Reservation. The district court erred when it suppressed the defendant's statements as being involuntary per se. First, there was absolutely no official coercion, no physical violence or threat of it, and no improper threats or promises. Second, there was no physical torture to support the court's finding that this was involuntary per se. Its findings were Third, the uncontroverted evidence proves that the defendant's will was in no way overborn. The interview was voluntary and non-custodial, yet the defendant was still informed of his Miranda rights and executed a consent to polygraph. Most ask you a couple questions here on, the record didn't seem to be very well developed in certain ways, and I want to make sure that I'm not missing anything. Is there anything that we can find in the record to tell how long certain things took during the day, or whether in fact the defendant was transported by the FBI agent? There are certain inferences that the, I think that the district court says, well, it seems reasonable that certain things happened, but I couldn't find anything in the record that said what time he got there, how long, you know, how long certain things took, just basically that it took a day. Your Honor, at 54 and 39 of the excerpts of record, we know that the interview began at approximately 9 a.m. Your Honor is correct that there's no ending time that's apparent from the record. With respect to the agent having transported the defendant, we believe that that finding was clearly erroneous by the district court. The only evidence that was presented, and this was uncontroverted, was that Agent Lintner, who did not testify at the time, had absolutely nothing to suggest that he drove the defendant there or otherwise transported him. Well, the district court made a number of findings, and that's one that you said, but some of them you said it was reasonable to make an inference from, and so that one I'm assuming that you disagree with. What, what about, what are the findings that you think we would have to be bound by in terms of, I think, one of the, there was a the district judge did not believe that the agent didn't confront the defendant with the results of the polygraph. Would we be bound by that? Well, Your Honor, it's the government's position that that finding was clearly erroneous, insofar as the court found that the agent was disingenuous in his response. The transcript of the colloquy that was developed on cross-examination between the defense attorney and the agent is clear that the agent never expressly informed the defendant of the results and at most insinuated the results. The agent was precise in that regard, and we believe that the district court's finding was disingenuous. To respond to your question, however, but what, but since the district court's there listening to the testimony and basically says, hey, I don't believe the officer on that because it just doesn't seem logical that after you do a polygraph and if there's deceptive results, if you want to actually have a meaningful interrogation, wouldn't it be logical that you would confront someone with the fact, well, you know, hey, you flunked the poly? The district court didn't find that the agent was not credible on that fact. He merely found that the agent's responses were disingenuous. And I would point the court to the colloquy itself to look at the... Is that sort of a distinction without a difference, though? That he's disingenuous as opposed to not credible? I mean, I guess... The point of the district court's finding was that Agent Kirk wasn't forthcoming in saying that he hadn't told the defendants of the results. Now, in this case, the agent never did tell the defendant of the results. He may have implied that he did poorly through what he did say. He did say that there were issues that he yet wanted to address with him. Well, let's assume that, but let's assume that we have to accept that finding and the officer did confront the defendant, the agent did confront the defendant with the result. What's wrong with that? Well, there's nothing wrong with that, Your Honor. That's not coercion, and that's not been found to be coercion under the precedent of this court. And to respond to your question about the factual findings, it's the government's position that you can take those clearly erroneous facts as true, and this statement was still not involuntary under the law. The district court's findings, while clearly erroneous and without a basis in the government's opinion, do not control the issue of voluntariness. And this court need not disturb those findings and still has ample evidence upon which it could base a finding that the defendant's statements were involuntary. Well, but I think Judge Callahan is on to something very important here. If you read these oral findings by the trial judge, the trial judge blows Mr. Kirk into small pieces in terms of credibility and says, among other things, he answered questions generally, evasively, uses the word disingenuous, and then he makes a finding with respect to the so-called confession that Mr. Kirk put woods into Mr. Haswood's mouth. And then we go down here and farther, and he was evasive about whether or not this could have been tape recorded so we could find out what's going on. And then he goes on and on and on. And he sums all of this up in terms of the technique used by concluding that the technique, which is illuminated by the agent's refusal to get serious about what really happened, resulted in an involuntary statement. Why isn't that sufficient for us to take a look at this and remind ourselves, once again, we weren't there. We don't know what happened, but this trial judge was very upset with your key witness's testimony, such that he found your key witness testimony not credible. Well, Your Honor, the problem is that the trial court's conclusions are rife with factual errors. If you look at the colloquy between the district court judge and the agent in this case, as well as direct and cross-examination, the agent was not allowed to respond to questions by this court. Well, who has the burden in the trial court of proving that the confession that you're trying to get in was voluntary? It's the government's burden by a criminal investigator of the tribe, Michael Henderson, and then there was the government's agent, Trace Kirk. Isn't Kirk the key witness? He, of course, is the key witness. If we take Kirk out because the trial court found him not credible, what do we have left with respect to the confession? There was no challenge to the evidence. There was no other evidence presented by the defendant, Your Honor. But what do we have left without Kirk? Agent Kirk's testimony was all of the evidence other than the documentary evidence that was presented on the issue. Isn't it true that the trial court concluded that Agent Kirk's misbehavior left a gaping hole in your case and you failed to prove that the confession was voluntary because the trial court concluded as a factual matter that the words used by Mr. Haswood were put into Mr. Haswood's mouth by Agent Kirk? And I would say that the court was clearly wrong on that basis. The agent was not even in the room when Mr. Haswood wrote out his written statements. Who discussed the whole matter before the statements were written out with Mr. Haswood? Agent Kirk. Well, see, that's what I'm getting at. Kirk sat down and discussed these and didn't even admit that the words sexual contact or whatever it was weren't used by Mr. Haswood before Kirk sort of said, well, here's the way we talk about those things in this business. And I would say with all due respect, Your Honor, the fact that the defendant chose to use those words when he was alone in a room writing his own statement does not in and of itself show that they were put in his mouth. Well, the trial court seems to have concluded that they were as a factual matter. So you're telling us that we should have to look at that and say, well, that's clearly erroneous. I don't believe there's evidence in this record that the agent put those words in the defendant's mouth and that, yes, that was clear of the district court to conclude that was the case. Excuse me, when did those words come up in the process? I'm sorry, Your Honor, which words? The ones that we're talking about, that were put into Mr. Haswood's mouth according to the factual finding of the district court. The testimony of Agent Kirk was made by Mr. Haswood's mouth. It was that they were in his written statement and that Agent Kirk had used them in his discussions with the defendant prior to the authoring of the statement. So isn't it fair to infer from that, as the trial court did, that those were words that were suggested by Agent Kirk and somehow forced into Mr. Haswood's vocabulary? I don't believe that that is in the record. There is no evidence the defendant did not testify to rebut Agent Kirk's testimony. There's no evidence that the defendant fell forced at all to use those words. Does he have to testify? No, he need not testify, but there's no contradicting evidence. Can you use this failure against him? No, and I did not mean to use it against him, but merely to show that Agent Kirk's testimony was unchallenged in this case. And we have no insight into what the defendant's perception of those words or decision to use those words, whether that was at all based on coercion or a volitional act on his part. Your Honor, I see my time has expired. If you have another question for me, I'll sit down. Thank you. We'll hear from the other side. Good morning. Ms. Song? My name is Greg Parzik, and I'm here on behalf of Mr. Haswood. I think it's clear from the record that the district court did not err when it viewed by the defendant's testimony. In the case of the case of the defendant's testimony, it was not the defendant's testimony. So, in the case of the defendant's testimony, it was the defendant's testimony. And I don't believe that the defendant had anything to do with the defendant's testimony. In the totality of the circumstances, all of the evidence presented at the volunteeriness hearing determined that the government obtained Mr. Haswood's statement by psychological coercion so that his will was overborne. I want to ask you this. If you take the inferences, the worst case scenario, and you accept the fact that an FBI agent drove Haswood to the examination where another agent subjected him to a day long of interrogation, even though I don't know, I'm just taking the outside on everything. During that time, Haswood denied molesting the young girl. Then one agent concluded the polygraph examination that he confronted Haswood with a belief that Haswood had lied. Then he presented him with a newspaper article that illustrated the possible consequences of lying. And then Haswood confessed, and then the agent subsequently told him what to put in the written confession, those two words, you know, putting words in the mouth. It took place in a conference room. There was one officer present. It appears that the agent explained his rights, that he signed two different consent forms, that there's no evidence of threats, violence, or promises, and that there's no evidence of any complaint of physical ailments. Now, if that's the worst case scenario, how wouldn't every confession be coerced? I mean... What specific words are we talking about? Well, the two specific words were sexual conduct and sexual contact. Agent Kirk specifically testified that those were his words he used. Agent Kirk also made statements during some of the examination that we talked about Mr. Haswood's statements once I felt comfortable with his statement, he felt comfortable with the statement, I asked him if he would write it up. And what the district court did is use that and also found just the overall, and I think it was already pointed out, evasiveness, disingenuous statements of... Where do you say that his will was overborn? Sure, he used the words, but where's the evidence that his will was overborn? Well, and that's where I think the district court, and obviously this court, looks at the totality of the circumstances. You then have to go back and look at the fact that Mr. Haswood denied the allegations to the investigator Henderson. He denied the allegations to Agent Kirk. He went so far as to say he was going to sue the victim for... Yeah, I understand that, but aren't you arguing that every case where the person starts out initially by denying something and then admits it, that that's necessarily the result of the kind of psychological coercion that we have decided we won't tolerate in courts? I am not. I'm looking to the fact that there are words that are placed in Mr. Haswood's... Well, you know, the words were... ...as found by the court. Well, I have to tell you, this is the way the world works. I worked for 23 years in law enforcement. When you're talking about sexual stuff, courts will even tell witnesses, don't use the street words for this kind of stuff, and they lapse into this kind of polite talk all the time. And so this strikes me as the usual fare. I mean, I prosecuted hundreds of these kinds of cases, and in every one, the vocabulary of the witnesses was cleaned up before we got to court, and nobody had any problem with that at all. And so here, all it seems to me is that he's adopted sort of a cleaned-up way of talking about what happened. What's the problem? That necessarily renders this involuntary? Again, in viewing the totality of the circumstances, that is one of the... But driving the guy, if you take it apart, I know it's improper to take, but if you look at all the various aspects, somebody drives somebody to the location of questioning. Why is that exciting? It's not, and I agree. If you look at it... And so here they advised him of his rights, and apparently he waived his rights. Is there a finding here anywhere that he didn't waive his rights? No. So he waived his rights. Correct. And then the same thing is true with the polygraph advice. So at all stages, the law enforcement people are doing precisely what the courts have told them they have to do. And so then they adopt some kind of vocabulary that cleans up the usual language in these kinds of cases. And I don't see yet where is the beef, as Walter Mondale said a long time ago. Well, again, I agree. If you take each individual fact and look at it separately, it doesn't amount to much. But a whole bunch of zeros don't add up to one, do they? I disagree with a whole bunch of zeros. I disagree with the term zero. I think when you look at what was done with the inference that was made that he failed the polygraph, and it wasn't an inference. He flat out said, I believe the victim in this case as opposed to you, right after that polygraph was given. And then that newspaper article, which the district court had a problem with because it doesn't show up anywhere except for the testimony. The cases seem to suggest it's perfectly appropriate after a polygraph examination or during a regular interrogation to tell somebody, hey, pal, no harm intended, but we don't believe a word you're saying. You're going to really mess yourself up if you continue with this nonsense. So long as a person's waived his or her rights, that seems to be absolutely appropriate, isn't it? It is. So what's the difference between that and what happened here? Because this case, the investigator, the agent, goes a step further and shows this newspaper article, and what the court found it to be is basically a threat of perjury charges as well. But what's untrue about it, I mean, if you can use subterfuge and ruse in interrogation, and that's been upheld in certain areas, I mean, if you lie under oath, you can't be convicted of an additional crime, right? Correct. So it's not even a lie. I'm sorry, I missed that. Well, it's – but, I mean, it's allowable to use subterfuge or ruse in interrogation under certain circumstances. Here he's only stating a truth, that if, in fact, you know, you think it can't get worse, but it can, if you commit perjury that, you know, and he shows them that, what's untrue about that? That's just the – that's the way of the world. Well, what he does is he shows them an article that he personally was involved with, saying, look, not only was this person convicted, but I also got a perjury charge on this person as well. Basically telling them, I don't believe your statements, and if you don't say what I want you to say, this can happen to you. But I'll go back to the cases that say it's perfectly appropriate to do that, so long as the person has waived his or her rights. Don't the cases say that? They do. So here we have a police officer that does that, and now all of a sudden we turn around and double-deck the officer and say, well, you shouldn't have done it in this case. Reckonability is a large part of the law. I agree, but again, what the district court found and what the district court looked at was the totality of the circumstances. It's not just that one piece. He puts them all together, and I know this court has referred to him as a bunch of zeros. Obviously the district court didn't find that. And that is – the district court makes these findings after hearing both the manner and the mode in which the agent testified. But we review all – we've reviewed the totality de novo. I agree. The facts for clear air, but the totality is de novo. Well, I do think that it's a factual finding the court made that the agent put words in Mr. Haswood's mouth. I put a lot of words in rape victims' mouths. Find a prosecutor or a defense attorney who hasn't. Even civil lawyers are known to have laughed in that regard. I used to tell a lot of witnesses, you know, that word's not going to go over too well in court. Well, do you have anything else you'd like to bring to our attention, counsel? That's all I have. Good. Thank you very much. We'll hear from the other side. The defense pointed you to the defendant's written statement. Keep in mind that it is incredible to argue that these were coerced words when the agent was not even physically present when they were written. That he used certain legally charged words is not in and of itself involuntary or shows coercion. In fact, it may show comprehension of what he had discussed with the agent. The statement itself is a page long. It contains edits that the defendant made by himself to the statement that were not corrected or altered in any way by the agent following upon that. I see that my time has expired, Your Honor, given that the- If you have anything else you feel you must tell us, go ahead. I would just sum up and say that the record shows that there was no coercion. This was noncustodial. There were Miranda and polygraph consents given, and the agent was not in the room. What happened to him after he confessed? He was released and charged several months later. In fact, over a year later. Thank you. Thank you, Counsel. We appreciate your work in this case. It's been well-briefed and well-argued. It's order submitted. We'll get you a decision as soon as we can. Thank you. Collins v. Ignacio. Thank you.
judges: Thompson, Trott, Callahan